IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD LOPARDO, *et al.*, | ) | CASE NO.:    1:02 CV 764 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| LEHMAN BROTHERS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | <u>AND ORDER</u> |
| | ) | |

This matter is before the Court on several motions: (1) Motion to Dismiss of Defendant SG

Cowen Securities Corporation (ECF #219); (2) Defendant Cowen & Company's Motion to Dismiss

Time-Barred Claims (ECF #221); (3) Defendant Cowen & Company's Joinder in Co-Defendant SG

Cowen Securities Corporation's Motion to Dismiss (ECF #222); (4) Motion for Judgment on the

Pleadings of Defendants Hambrecht & Quist, Inc. and J.P. Morgan Chase & Co. (ECF #232); and,

(5) Motion of Plaintiff, Melissa Lopardo For Leave to File Second Amended Complaint (ECF #273).

Plaintiffs Charles Lopardo, as trustee for the Lopardo Family Trust ("Charles Lopardo"), and

Melissa Lopardo filed a joint Memorandum in Opposition collectively addressing the arguments

raised in all of the Defendants' Motions to Dismiss. (ECF #235).  Defendants SG Cowen Securities

Corporation ("SG Cowen") and Cowen & Company each filed a Reply brief in support of their respective Motions to Dismiss. (ECF # 246, 248). Melissa Lopardo then filed a combined Sur-reply in Opposition to the Motions to Dismiss. (ECF #272). Charles Lopardo did not join in Melissa Lopardo's Sur-reply, nor did he join in her Motion for Leave to File a Second Amended Complaint. Plaintiffs Richard and Catherine Lopardo have not responded to any of the Motions to Dismiss nor have they joined in or otherwise commented on Plaintiff Melissa Lopardo's Motion for Leave to File a Second Amended Complaint. [1]

Defendants SG Cowen and Cowen & Company each filed Memorandum in Opposition to Melissa Lopardo's Motion for Leave to File a Second Amended Complaint. (ECF #278, 279). Melissa Lopardo filed a Reply to each. (ECF # 281, 282). The Court has carefully considered all of the pleadings, motions, briefing, and relevant law, and these issues are now ready for disposition.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favor of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court will not, however, accept conclusions of law

---

[1]

Defendant Frank Gruttadauria has filed an answer to the First Amended Complaint. (ECF #268). He has not joined in any of the motions to dismiss, nor has he opposed Melissa Lopardo's Motion for Leave to File a Second Amended Complaint.

or unwarranted inferences cast in the form of factual allegations.  *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (internal citation omitted); *see also Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)").  Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable.  *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account.  *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).  It is with this standard in mind that the instant Motion must be decided. In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." *Jones v. City of Carlisle, Ky.*, 3 F.3d 945, 947 (6th Cir. 1993) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)).  However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp 971, 975 (S.D.Ohio 1993).

-3-

This Court will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41 (1980).  In deciding a Rule 12(b)(6) motion, this Court must determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## PROCEDURAL HISTORY

The Plaintiffs filed this action in April of 2002 alleging various claims against an array of defendants.  (ECF #1).  The remaining claims are all based on allegations of malfeasance which took place from 1982 through January of 2002, in connection with securities accounts the Plaintiffs purchased from Defendant Frank Gruttadauria.  The case was originally assigned to the Honorable Judge John Manos, who eventually stayed the action pending arbitration of the claims against Cowen & Company, S.G. Cowen, and Lehman Brothers.  (ECF #163).

Over the course of the litigation, several parties were dismissed or withdrew from the case.  DeGrandis & DeGrandis was voluntarily dismissed (ECF # 176); Plaintiff James Lopardo passed away (ECF #170); the Estate of Emily Lopardo released all claims against all defendants (ECF # 182, 183, 184); and Lehman Brothers was dismissed (ECF #204).   The case was reassigned to the current Judge, and the stay was lifted upon the completion of the arbitration. (ECF #200).

In July of 2007, Plaintiffs Richard Lopardo, Catherine Lopardo, Melissa Lopardo, and Charles Lopardo (as Trustee for the Lopardo Family Trust)("Charles Lopardo") joined in filing

the First Amended Complaint against Defendants Frank Gruttadauria, Cowen & Company, S.G. Cowen, Hambrecht & Quest, Inc. ("Hambrecht & Quest"), and J.P. Morgan Chase & Co. ("J.P. Morgan"). (ECF # 206).  Melissa Lopardo and Charles Lopardo subsequently dismissed their claims against Hambrecht & Quist and J.P. Morgan.   (ECF #215).

Defendants S.G. Cowen and Cowen & Company filed motions to dismiss all claims against them by Richard and Catherine Lopardo based on res judicata because they allege these claims have already been fully and finally adjudicated during the previous arbitration.  They also moved to dismiss all claims by Melissa Lopardo on the grounds that she does not have legal standing to pursue them.  S.G. Cowen and Cowen & Company also seek to dismiss the claims for violations of the Ohio Pattern of Corrupt Activities Statute, and Plaintiffs' promissory estoppel claims for failure to state a claim upon which relief can be granted. (ECF # 219, 222).  Hambrecht & Quist and J.P. Morgan join in the Motions to Dismiss those two claims based on Fed. R. Civ. P. 12(b)(6).  (ECF # 219, 222, 232).  Cowen & Company, Hambrecht & Quist, and J.P. Morgan filed motions to dismiss all claims against them based on the applicable statutes of limitations and/or statutes of repose.  (ECF # 221, 232).

Melissa Lopardo, after hiring new counsel, filed a Motion for Leave to File a Second Amended Complaint.  (ECF # 273).  None of the other remaining Plaintiffs have joined in this request.  The Court, hereby grants Melissa Lopardo's Motion for Leave to File a Second Amended Complaint.  In the interest of fairness and judicial economy, however, the pending Motions to Dismiss shall be considered as they apply to the claims made by Richard, Catherine, and Charles Lopardo in the First Amended Complaint, and in so far as they may still be applicable to the claims set forth by Melissa Lopardo in her Second Amended Complaint.

Further, the Defendants' Memorandum in Opposition to Melissa Lopardo's Motion for leave to
file the Second Amended Complaint shall be treated as Motions to Dismiss in so far as a request
for dismissal is fairly implied.

The outstanding claims are as follows:

- Richard and Catherine Lopardo have claims against Hambrecht & Quist and J.P.
  Morgan for (1) breach of fiduciary duty; (2) fraud; (3) federal securities violations
  under 10(b)(5); (4) violations of 15 U.S.C. §771; (5) violations of O.R.C.
  §1707.44; (6) negligent misrepresentation; (7) promissory estoppel; (8) negligent
  hiring, retention and supervision; and (9) breach of implied contract and bailment.

- Richard, Catherine, Charles and Melissa Lopardo have claims against Frank
  Gruttadauria, Cowen & Company, and S.G. Cowen for (1) breach of fiduciary
  duty; (2) fraud; (3) negligent misrepresentation; and (4) breach of implied
  contract.

- Richard, Catherine, Charles and Melissa Lopardo have claims against Cowen &
  Company and S.G. Cowen for negligent hiring, retention and supervision.

- Richard, Catherine, and Charles Lopardo have additional claims against Frank
  Gruttadauria, Cowen & Company, and S.G. Cowen, for (1) federal securities
  violations under 10(b)(5); (2) violations of 15 U.S.C. §771; (3) violations of
  O.R.C. § 1707.44; (4) promissory estoppel; and  (5) breach of bailment.

- Melissa Lopardo has additional claims against Frank Gruttadauria, Cowen &
  Company, and S.G. Cowen for (1) equitable estoppel, and (2) punitive damages.

- Richard, Catherine, and Charles Lopardo have claims against Frank Gruttadauria
  for violations of O.R.C. §2923.32 – Pattern of Corrupt Activity.

- Melissa Lopardo has claims against Cowen & Company and S.G. Cowen for
  violations of O.R.C. § 2923.32 –  Pattern of Corrupt Activity.

## ANALYSIS

A.  Res Judicata based on the Earlier Arbitration

All of the claims brought against Cowen & Company and S.G. Cowen by Richard and Catherine Lopardo in this action were litigated in an NASD Dispute Resolution Arbitration, numbered 04-04050.  The Arbitration panel considered the following causes of action: failure to supervise; promissory estoppel; violations of the Securities and Exchange Act of 1934; violations of Ohio securities laws; breach of fiduciary duty; fraud; civil conspiracy; negligent hiring, retention, and supervision; negligent misrepresentation; breach of implied contract/bailment; violation of Ohio Revised Code § 2923.32; and intentional infliction of emotional distress.  After considering the pleadings, testimony, and other evidence presented at the arbitration hearing, the NASD Panel denied and dismissed with prejudice, all of Richard and Catherine Lopardo's claims against Cowen & Company and S.G. Cowen.  (ECF #219, Attach. 2).  The Lopardos failed to file any objections to the arbitration panel's decision within the allowable three-month period as set forth in Section 12 of the Federal Arbitration Act.  9 U.S.C. §12.  The decision, is therefore, a final adjudication on these issues.  *See*, *e.g.*, *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998); *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (9th Cir. 1985).  The Lopardos have not presented any argument in opposition to Cowen and Company's, or S.G. Cowen's Motions to Dismiss on these grounds.  Therefore, all of Richard and Catherine Lopardo's claims against Cowen & Company, and S.G. Cowen are hereby dismissed with prejudice.

The First Amended Complaint also asserts claims by Richard and Catherine Lopardo

against Hambrecht & Quist, J.P. Morgan Chase & Co., and Frank Gruttadauria.  There is no mention of any of these three defendants in the arbitration decision, and none of these claims appear to have been actually adjudicated during the NASD arbitration.  Although Judge Manos, in his Memorandum of Opinion dated March 17, 2004, held that the arbitration agreement signed by Richard and Catherine Lopardo when they opened an account with Gruttadauria in 1989 was valid, and "remained in force throughout the account's existence with each change in brokerage," (*Lopardo v. Lehman Brothers, Inc.*, Case No., 1:02 CV 764, at 8 (N.D. Ohio, March 17, 2004), none of the parties ever moved to enforce the arbitration agreement with regard to the claims made against them.

Section three of the Federal Arbitration Act states that the trial of issues subject to a valid arbitration agreement "shall on application of one of the parties" be stayed pending arbitration.  9 U.S.C. §3.   A court may not *sua sponte* force parties to enforce an arbitration agreement.  *See, e.g., American Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316 (6th Cir. 1950);  *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1413 (9th Cir. 1990); *Standard Tallow Corp. v. Kil-Management*, 901 F.Supp. 147, 151 (S.D.N.Y. 1995).   Because Hambrecht & Quist, J.P. Morgan and Frank Gruttadauria never made an application for arbitration,[2] and because the Plaintiffs never sought to arbitrate their claims against these defendants,  the claims against them remain before this Court for determination.

---

[2]

Hambrecht & Quist and J.P. Morgan did assert arbitration as a possible affirmative defense in their Answer to the original Complaint. (ECF # 21).  However, they never filed a Motion to Compel Arbitration; they did not join in the Motions to compel filed by other Defendants; and they abandoned this defense in their Answer to the First Amended Complaint.  (ECF # 217).

B.  <u>Melissa Lopardo's Standing</u>

Defendants, S.G. Cowen and Cowen & Company seek to dismiss Melissa Lopardo's claims for lack of standing, arguing that the First Amended Complaint does not allege any facts that would demonstrate that she owned or controlled an account at either brokerage.    They contend that the account she is suing about is a trust account and she is the beneficiary.  The First Amended Complaint references only one account that is connected to Melissa Lopardo, and that account is titled:  "Richard Lopardo Trustee FBO Melissa Lopardo Trust."  (First Amended Complaint ¶ 17).  The only other description of the account is in paragraph 13 of the First Amended Complaint where it is alleged that "Richard Lopardo established an account for his daughter, Melissa Lopardo."    (First Amended Complaint ¶ 13).  The Second Amended Complaint, which now governs Melissa Lopardo's claims further alleges specific facts indicating that Frank Gruttadauria forged documents naming the account as a trust; that a legal trust was never established and was never intended; and that Melissa Lopardo is the owner of the account at issue.  (Second Amended Complaint ¶¶ 69-72).

If Melissa Lopardo is indeed the beneficiary of a trust account, she would not have standing to maintain her claims on behalf of that trust.  It is well established that the trustee, not the trust beneficiary, would have standing to maintain a suit against a third person for injury to the trust.  Restatement (Second) of Trusts §282(1)(1959); Fed. R. Civ. P. 17(a); 6A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1548(2d ed. 1990).   It is unclear, however, whether the account at issue was a trust account or an account that was set up for her benefit and which she owned in her individual capacity.

The mere naming of an account as a trust account does not establish it as one.  *See, e.g.*

-9-

*Gammarino v. Hamilton Cty Bd. of Revision*, 84 Ohio St.3d 155, 158 (1998).  There are specific requirements that must be followed to create a legal trust.  In order to create a trust there must be (1) a declaration of trust accompanied by the intent to create a trust, and (2) an actual conveyance or transfer of property to the trust.  *First National Bank of Middletown v. Gregory*, 468 N.E. 2d 741 (Ohio App. 1983).  The declaration must establish the trust terms and contain explicit language of intent to create a trust.  *Estate of Hoffman*, 175 Ohio St. 363, 366 (1963).

Neither the First Amended Complaint, nor the Second Amended Complaint alleges that the account at issue was a trust, only that it was given that label at some point in time.  Taken literally, the Amended Complaints do allege that Melissa Lopardo, and each of the other Plaintiffs had accounts with the Defendants and that those accounts were compromised by the alleged bad acts and/or omissions of Frank Gruttadauria and the other Defendants.  (First Amended Complaint ¶¶ 15, 17, 18, 20, 21 34, 35, 36).  Further, even if the account was originally established as a trust account, the record in this case indicates that the trust may have terminated and title to the assets may now currently rest with Melissa Lopardo. *(*See Judge Manos' Memorandum of Opinion dated March 17, 2004:  *Lopardo v. Lehman Brothers, Inc.*, Case No., 1:02 CV 764, at 8 (N.D. Ohio, March 17, 2004)).

In short, there is no way to determine, based solely on the face of the Second Amended Complaint, whether the account at issue is a trust account with a separate trustee, or whether Melissa Lopardo, in fact, owns the account.  Because the Court, when evaluating a 12(b)(6) motion to dismiss,  must accept the plaintiff's allegations as true, and must view those allegations in the light most favorable to the plaintiff, the Court must, at this stage of the proceedings, give the benefit of the doubt to Melissa Lopardo.  Although further discovery may provide a basis to

re-visit this issue, she has pled sufficient facts to allege that she owns the account at issue and the

Motion to Dismiss for lack of standing must, at this point, be Denied.

### C.  Statute of Limitations/Statute of Repose

According to the First and Second Amended Complaints the Plaintiffs were injured by

acts of Frank Gruttadauria from 1982 through January of 2002, while he worked for various

brokerage firms.[3]  The Amended Complaints allege that Mr. Gruttadauria worked for Hambrecht

& Quist (succeeded in interest by J.P. Morgan Chase & Co.) from 1987 through May 1989.  He

then worked for Cowen and Company from May 1989 to July 1998.  S.G. Cowen employed

Gruttadauria from July 1998 to October of 2000.  (First Amended Complaint ¶¶ 6-8).   The

original Complaint was filed against all of the defendants on April 22, 2002.  (ECF #1).

The brokerage defendants have all argued that many of the Plaintiffs' claims are barred

by the applicable statutes of repose, and statutes of limitations.  Plaintiffs have offered no counter

to this argument insofar as it applies to the claims premised on federal securities laws.  However,

Plaintiffs contend that the Ohio statute of repose does not apply to many of the state claims, and

that, even where it does apply, it is subject to equitable tolling.   Because each Defendant

controlled the accounts at issue during different time periods, the Court must first determine

whether the statute of limitations or repose may be applied to bar Plaintiffs' claims, and if they

can, then the Court must determine which claims against which Defendants fell outside the

---

[3]

The facts as stated in this Memorandum and Order are taken from the First and Second Amended
Complaints and should not be construed as findings of this Court.  In a motion to dismiss, the Court
is obligated, for the purposes of that motion, to accept as true the facts set forth by the non-moving
party, in this case, the Plaintiffs.

prescribed time limits.

A distinction has been made between "statutes of limitation" and "statues of repose."  As the definition and application of these terms may have significant effect on the outcome of this case, it is important that they are reviewed closely.   There appears to be an inconsistency in the use of these terms within the federal and state courts, and within the Sixth Circuit itself. However, that inconsistency can generally (with some exceptions) be traced to whether the Courts were applying federal law or interpreting an underlying state law.

Historically, under federal law, "statutes of limitations" were considered to be a subset of or alternative term for "statutes of repose."  *See, e.g., United States v. Kubrick*, 444 U.S. 111, 117 (1979)("[Statues of limitations] are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence...")(citations omitted); *Bauserman v. Blunt*, 147 U.S. 647, 659 (1893); *Shepherd v. Thompson,* 122 U.S. 231, 234-36 (1887); *see also* Black's Law Dictionary, Fifth Ed. (1979) ("Statutes of limitation are statutes of repose, and are such legislative enactments as prescribe the periods within which actions may be brought upon certain claims or within which certain rights may be enforced.").   The Sixth Circuit has adopted this view in many cases.  *See Amalgamated Industries Ltd. V. Tressa, Inc.*, 69 Fed. Appx. 255 (6th Cir. 2003)("this holding is in keeping with the purpose of statutes of limitations, which are statutes of repose that preclude the presentation of stale claims"); *Hughes v. Vanderbilt University*, 215 F.3d 543 (6th Cir. 2000)(quoting *United States v. Kubrick*, 444 U.S. 11, 117 (1979) which held that statutes of limitations are statutes of repose and applying an objective discovery rule to the running of the limitations period); *United*

*States v. $515,060.42 in United States Currency*, 152 F.3d 491, 503 (6th Cir. 1998)("statutes of limitation are statutes of repose").

In numerous other cases, however, the Sixth Circuit has distinguished the term "statute of limitation" from the term "statute of repose," assigning each significantly different definitions and practical applications.  Most of these cases involve the application of state law.  Courts taking this approach generally treat what they label "statutes of limitation" as procedural tools which limit the remedy available to a litigant, but do not affect the substance or creation of a cause of action.  In contrast, they assign the label "statute of repose" to any statute which includes a specific period following an initiating event as part of the definition for a  new cause of action.  *See, e.g.*, *Charash v. Oberlin College*, 14 F.3d 291, 299 (6th Cir. 1994)("'Unlike a true statute of limitations, which limits the time in which a plaintiff may bring suit after a cause of action accrues, a statute of repose. . . potentially bars a plaintiff's suit before the cause of action accrues."); *Roskam v. Lanham Machinery Company, Inc*., 288 F.3d 895, 902-903 (6th Cir. 2002)(finding that under Michigan law a statute of limitations nullifies a party's remedy and acts as an affirmative defense, but a statute of repose operates to bar a cause of action from ever accruing); *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 590 (6th Cir. 2004)("'a statute of limitations focuses on time measured from an injury; a statute of repose rests on the time from some initiating event unrelated to an injury'" (citations omitted)).  Under this approach, for example, if a statute prohibits bringing a fraud claim after six years from the time of the injury, it would be labeled as a "statute of limitations."  However, if the statute defined a new cause of action for consumer fraud as one that arises within four years after a product is purchased, then it would be considered a "statute of repose."  Some cases even attempt to follow both lines of authority

-13-

simultaneously, distinguishing a statute of limitation from a statute of repose, and then quoting and citing with approval cases that say a statute of limitation is a statute of repose.  *See, e.g., Wuliger v. Owens*, 365 F.Supp. 2d 838, 845-846 (N.D. Ohio 2005).

The idea that statutes of limitation affect procedural rights and not substantive rights can be traced back at least as far as the United States Supreme Court decision in *Campbell v. Holt*, 115 U.S. 620 (1885).  The Court in *Campbell* held that a statute of limitations is an arbitrary limit, provided by the legislature as a defense to a claim of injury, which is put in place to advance a public policy.  *Id.* at 627.  It does not affect the underlying nature and character of the claim or injury at issue.  *Id.*  Therefore, except in cases where title to real or personal property has actually transferred (i.e. ownership has in fact changed), a statute of limitations eliminates the remedy available to a injured party and not the underlying obligation.  *Id.* at 627-628.   Because of this, the Court held that a change in or elimination of the statute of limitations applicable to a particular type of action may be applied retroactively without affront to the United States Constitution, even after the original limitations period has expired.  This principle was reaffirmed by the United States Supreme Court in the case of *Chase Securities Corp. v. Donaldson*, 325 U.S. 304 (1945).

These cases still make no distinction, however, between the terms "statute of limitations" and "statute of repose."  The United States Supreme Court cases following these still treat a statute of limitations as a type of statute of repose.  *See, e.g., United States v. Kubrick*, 444 U.S. 111, 117 (1979).  (See also, cases cited, *supra* at the start of this section).  It seems that in the development of the federal law, "statute of limitations" was used as a legal term of art, while "statute of repose" was simply a descriptive term used to explain the purpose of this type of

-14-

legislation.[4]

The significant divergence in the definitions of these terms appears to have originated under state law. The adoption of "statute of repose" as a legal term of art first made its way into the federal courts when they applied state law in diversity cases. *See, e.g.*, *Goad v. Celotex Corp.*, 831 F.2d 508 (4th Cir. 1987); *Resolution Trust Corp. v. Olson*, 768 F.Supp. 283 (Dist. Ariz. 1991); *Independent School District No. 197 v. W.R. Grace & Co.*, 752 F.Supp. 286 (Dist. Minn. 1990). Consequently the treatment of "statutes of repose" varies in the case law depending on which state's law is being applied.[5]

The separation between the terms may have been further advanced in federal cases by the United States Supreme Court's opinion in *Lampf v. Gilbertson*, 501 U.S. 350 (1991). The Court in that case determined that the limitations periods set forth in the Securities Exchange Act of 1934 ("the 1934 Act") and the Securities Act of 1933 ("the 1933 Act") were the applicable limitations periods for claims arising under 10(b) of the 1934 Act. The Court in *Lampf*, was

---

[4]

"[Statutes of limitation] are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *United States v. Kubrick*, 444 U.S. 111, 117 (1979)(citations omitted).

[5]

In some states "statutes of repose" have been deemed unconstitutional under the state's constitution (*see, e.g.*, *Brennaman v. Bechtel Group, Inc.*, 70 Ohio St.3d 460 (1994)); in some equitable tolling principles are applied (*see, e.g.*, *Sharon Steel Corp. v. Workmen's Compensation Appeal Bd.*, 670 A.2d 1194 (Pa. Commw. Ct. 1996)); in some there are statutory exceptions when an injury has been fraudulently concealed (*see., e.g.*, Tenn. Code Ann. §29-26-116(a)(3)); and in some they are strictly enforced as absolute cut-offs (*see, e.g.*, *O'Brien v. Hazelet & Erdal*, 410 Mich. 1, 299 N.W.2d 336 (1980); *First United Methodist Church of Hyattsville v. United States Gypsum Co.*, 882 F.2d 862, 865 (4th Cir. 1989)).

faced with a legislative enactment that combined two separate limitations periods - one of which specifically stated that it would not commence until one year after discovery of the facts constituting a violation of the statute, and a second which set an outside cut-off of three years after the offer or sale which gave rise to the claim.  *Id.*  In order to distinguish between the two, the Court labeled the first time frame a "period of limitation," and labeled the second a "period of repose."  *Id*.

The *Lampf* Court found that, under federal law, when the legislature sets up a two-part limitations period such as the 1 and 3 year structure in the statute at issue in that case, there can be no equitable tolling of the limitations period.  The only way to give effect to both sections of the statute is to read the longer (three year) period as an absolute outside limit on bringing a claim.  *Id.* at 363 (citing Bloomenthal, The Statute of Limitations and Rule 10b-5 Claims: A Study in Judicial Lassitude, 60 Colo. L. Rev. 235, 288 (1989), and ABA Committee on Federal Regulation of Securities, Report of the Task Force on Statute of Limitations for Implied Actions 645, 655 (1986)(Congress did not intend equitable tolling to apply in actions under the securities laws.)).  Thus, whether or not they label a limitations period as a statute of repose, or a statute of limitations, it is clear that under federal or state law, it is constitutionally acceptable for the legislature to provide a general cut-off for bringing certain types of actions.  Such statutes represent a clear legislative intent to encourage the prompt presentation and resolution of claims.  As the United State Supreme Court has stated:

> Statutes of limitations, which "are found and approved in all systems of enlightened jurisprudence," *Wood v. Carpenter*, 101 U.S. 135, 139 (1879), represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them."*Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349

>        (1944).  These enactments . . . protect defendants and the court from having to
>        deal with cases in which the search for truth may be seriously impaired by the loss
>        of evidence, whether by death or disappearance of witnesses, fading memories,
>        disappearance of documents, or otherwise.

*United States v. Kubrick*, 444 U.S. 111 (1979)(external citations omitted). It is also clear that

generally such statutes are subject to equitable tolling.  *See, e.g., Irwin v. Department of Veterans*

*Affairs*, 498 U.S. 89, 95 (1990).

However, the United States Supreme Court has held that, under federal law, when a

statute specifically provides one time period which does not begin to run until after the discovery

of an injury, and a second time period that is not reliant on when an injury is discovered, the

legislative intent must be to set an absolute cut-off without regard to issues of discovery or

equitable tolling. *Lampf v. Gilbertson*, 501 U.S. 350, 363 (1991).   The Court held that this is not

a violation of the United States Constitution.  *Id.*[6]  It is on this point that state law differs.  Many

state courts, and federal courts applying state law, have found that an absolute cut-off – a time

period that may expire before the injured party is even ever aware of the injury – is

impermissible, either under the state's constitution, or under general principles of equity.


1. Federal Statute of Repose

Federal courts apply a three year period of repose for federal securities violations.  *See,*

*e.g., Lampf v. Gilbertson*, 501 U.S. at 363-64; *Pullins v. Klimley,* 2008 U.S. Dist. LEXIS 3467

(S.D. Ohio Jan. 7, 2008); *In re Enron Corp. Securities, Derivative & ERISA Litigation,* 258 F.

---

[6]

 "It goes without saying that statute of limitations often make it impossible to enforce what
were otherwise perfectly valid claims.  But that is their very purpose, and they remain as
ubiquitous as the statutory rights or other rights to which they are attached or are
applicable."  *United States v. Kubrick*, 444 U.S. 111, 125 (1979)

Supp.2d 576, 601 (S.D. Tex. Mar. 12, 2003); *De La Fuente v. DCI Telecomm., Inc.*, 206 F.R.D. 369, 380 (S.D.N.Y. 2002).  This period is not subject to equitable tolling.  *Id.*

Plaintiffs filed this action on April 22, 2002.  (ECF #1).  Therefore, any claims that arose before April 22, 1999 are barred by the repose periods set forth in the 1934 Securities Exchange Acts.  This would bar all federal securities claims charged against  Hambrecht & Quist (succeeded in interest by J.P. Morgan Chase & Co.) which according to the First Amended Complaint could only have arisen from 1987 through May 1989.  It would also bar all federal securities claims against Cowen and Company as it transferred its brokerage business to Societe Generale in July of 1998.  Those claims, are therefore, dismissed.[7]  The federal securities claims levied against S.G. Cowen and Frank Gruttadauria are limited to claims that arose after April 22, 1999.[8]

### 2. State Statute of Repose

Ohio also imposes a two tier statute of repose on securities claims.  For claims brought prior to September 16, 2003, section 1707.43 of the Ohio Revised Code provides:

> No action for the recovery of the purchase price [based on a violation of the Ohio securities laws], and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of [the Ohio securities laws], shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than four years from the date of such sale or contract for sale, whichever is the shorter period.

---

[7]  None of the defendants have opposed the dismissal of these claims.

[8]
  Melissa Lopardo abandoned all of her federal securities claims in her Second Amended Complaint, and Richard and Catherine's claims against S.G. Cowen are barred by res judicata as set forth above.  Therefore, any such claims remaining against S.G. Cowen could only benefit Charles Lopardo.  Federal securities claims remain against Frank Gruttadauria on behalf of Charles, Richard and Catherine Lopardo.

-18-

Ohio Rev. Code §1707.43(B)(2002).

The parties are in stark disagreement as to how the Court should apply this statutory provision.  Plaintiff Melissa Lopardo contends that statutes, which set an absolute cut-off for bringing an action, violate the Ohio Constitution.  The other Plaintiffs claim that equitable tolling should be applied to extend the four year limit.  The Defendants argue that Ohio law should mirror the federal, and that the four year period of repose is enforceable, absolute, and immune from principles of equitable tolling.  The parties also disagree as to whether the Plaintiffs' state common law claims are also subject to this statutory period of repose.

For the same reasons cited by the United States Supreme Court in *Lampf*, it is evident on the face of the statute, that the Ohio legislature intended to create a four year absolute cut-off for actions based on the sale or offer of sale of securities.  The statute of repose includes a two year limitation, which by its express terms begins to run only after the complainant is aware or should have been aware of the illegal activity at issue.  This renders equitable tolling unnecessary.  The statute then adds a four year limitations period which is not limited by the discovery of the injury.  Because the statute directs that the shorter of two time periods is to apply, if the four year period commenced only after discovery of the injury under equitable principles, the two year period would always be the first to expire and the four year provision would be rendered meaningless.

It would violate long established principles of Ohio law to apply the statute in a way that would render portions of it superfluous.  *See, e.g.*, *E. Ohio Gas Co. v. Pub. Util. Comm.*, 39 Ohio St.3d 295, 299, 530 N.E.2d 875 (1988); *D.A.B.E., Inc. v. Toledo-Lucas County Bd. of Health*, 96 Ohio St. 3d 250, 773 N.E.2d 536 (2002).  It seems clear that Ohio law would not support the application of equitable tolling provisions to a period of repose that was clearly intended to serve

-19-

as an absolute cut-off on the right to litigate a particular claim.

The Ohio Supreme Court, however, has banned the enforcement of some statutes which create such an absolute cut-off, holding that they violate the Ohio Constitution.  There are no Ohio cases specifically addressing the constitutionality of the absolute repose period set forth in O.R.C. § 1707.63.  There are however, Ohio Supreme Court cases addressing the constitutionality of other statutes of repose, in some cases banning their enforcement, and in others upholding their application.

Up until 1994, the Ohio Supreme Court had upheld certain absolute statutes of repose as valid under the Ohio Constitution.  *See Sedar v. Knowlton Construction Company*, 49 Ohio St.3d 193, 551 N.E.2d 938 (1990).  The *Sedar* Court upheld the application of an absolute cut-off for tort claims against architects, construction contractors and other servicers who performed work related to the design and construction of real property, even though it had previously held that an absolute cut-off period for claims for medical malpractice actions was unconstitutional because it violates the right-to-remedy guaranteed by the Ohio Constitution. *Id.* (citing *Hardy v. VerMeulen*, 32 Ohio St.3d 45, 512 N.E.2d 626 (1987); *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 514 N.E.2d 709 (1987)).  The *Sedar* Court took great pains to distinguish the reasoning in the medical malpractice cases of *Hardy* and *Gaines* in order to uphold the application of the statute. The *Hardy* court had invalidated the statute of repose for medical malpractice claims reasoning that the right-to-remedy clause in the Ohio Constitution[9] would not permit a claim to be

---

[9]

Section 16, Article I of the Ohio Constitution provides that "[a]ll courts shall be open, and every person, for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

extinguished before the plaintiff had knowledge of her injury.  *Hardy*, 32 Ohio St. 3d at 47, 512 N.E.2d at 628.  In *Sedar*, however, the Ohio Supreme Court found that the statutes at issue in *Hardy* and *Gaines* were actually "statutes of limitation" which prevented plaintiffs from bringing suit for an injury that had already occurred, but which had not been discovered prior to the expiration of the limitations period.  The statute at issue in *Sedar* was, according to the Court, a true "statute of repose"statute that did not limit an already established or vested right of action, but rather prevented an action from ever accruing.  *Sedar*, 49 Ohio St.3d at 195, 551 N.E.2d 938.

In 1993, the Ohio Supreme Court decided *Burgess v. Eli Lilly & Co.*, 66 Ohio St.3d 59, 609 N.E.2d 140 (1993), in which it held that the General Assembly is constitutionally precluded from eliminating the right to remedy "before a claimant knew or should have known of her injury."  *Id.* at 61, 609 N.E.2d at 141.   The *Burgess* court applied the reasoning from *Hardy*, and specifically extended that reasoning to invalidate statutes of repose on all types of claims.

> *Hardy* is rooted not only in the right-to-remedy clause of the Ohio Constitution, but also in common sense.  While *Hardy* dealt nominally with medical malpractice claims, its reasoning that the right-to-remedy clause requires a plaintiff's knowledge of her injury should be applied to ***all claims***. . . . The right-to-remedy clause, as interpreted by this court, thus sets as the threshold for government action the claimant's knowledge of her injury and its cause.

*Id.* at 61, 609 N.E.2d at 142. (Emphasis added).

In 1994, the Ohio Supreme Court specifically overruled *Sedar v. Knowlton Constr. Co.* (1990), 49 Ohio St.3d 193, 551 N.E.2d 938, and held that "R.C. 2305.131, a statute of repose, violates the right to a remedy guaranteed by Section 16, Article I of the Ohio Constitution, and is, thus, unconstitutional." *Brennaman v. R.M.I. Co.,* 70 Ohio St.3d 460, ¶ two of the syllabus 639 N.E.2d 425 (1994).   This temporarily eliminated the only remaining thread of support for the enforcement of an absolute statute of repose under Ohio law.

-21-

Just recently (subsequent to the completion of the briefing in this case), the Ohio Supreme Court reinstated the *Sedar* holding and reaffirmed the reasoning set forth therein.  *See Groch v. Gen. Motors Corp*., Slip Opinion No. 2008-Ohio-546.  In *Groch*, the Court compared and contrasted the statutes at issue in *Sedar* and those at issue in *Hardy* and other medical malpractice cases; the key distinction being that in *Sedar*, no injury had occurred before the expiration of the statutory limitations period, while in *Hardy*, an injury had occurred, but had not yet been discovered.  The Court also revisited the *Brennaman* case, chastising the opinion for its lack of detailed reasoning and overbroad conclusions.[10] Id. at ¶ 138.   Although the *Groch* Court did not overrule the specific finding that the statute at issue in *Brennaman* was unconstitutional, it limited the holding in that case to the specific statute and facts at issue therein.  Id. at ¶ 146 ("We confine *Brennaman* to its particular holding that former R.C. 2305.131, the prior statute of repose for improvements to real property, was unconstitutional.  It is entitled to nothing more.").

The *Groch* case did not overrule or cast aspersions on the reasoning behind *Hardy* or the other medical malpractice cases which found the applicable  limitations periods to be unconstitutional in those circumstances.  Rather, it served to clarify the distinctions between the limitations statutes at issue in those cases and the constitutionally valid limitations periods applicable to the products liability issues in *Groch* and  *Sedar.*  Therefore, *Hardy, Gaines, Sedar,* and *Groch* all remain valid precedent under Ohio law. [11]

---

[10]

"*Brennaman* gave scant justification to support any of the court's reasoning.  *Brennaman*'s imprecise analysis not only overruled *Sedar*, but also led to sweeping repudiation by implication of not just the specific statute of repose before it, but of all statutes of repose in general, including presumably those enacted after *Brennaman* was decided."  *Groch v. Gen. Motors Corp*., Slip Opinion No. 2008-Ohio-546, at ¶138.

[11]

Although *Burgess* and *Brennaman* were not specifically overruled, the *Groch* court so

-22-

This Court, therefore, must compare the limitation period set forth in Ohio Rev. Code §1707.43(B)(2002), to the statutes at issue in the cases set forth above to see which line of reasoning would apply under these circumstances.  The limitations periods which were found unconstitutional in *Hardy* and *Gaines* barred the prosecution of claims which accrued (i.e. in which the injury occurred) before the period expired, but which were not discovered until after the period expired.  The limitations periods which were found constitutionally valid under *Sedar* and *Groch* expired before the cause of action ever arose (i.e. before the injury ever actually occurred).

The limitations period at issue in this case addresses claims arising from the sale of securities and expires four years after the date of the sale.  Therefore, in most, if not all, of the cases applying this statute, the injury will have occurred prior to the expiration of the limitations period.  Specifically, in this case, the allegations are that the injury occurred prior to the expiration of the four year limitations period, but that the Plaintiffs were (due to the Defendants' alleged fraudulent concealment) unaware of the injury until after the period had expired.  This makes Ohio Rev. Code §1707.43(B)(2002) more like the invalidated malpractice "statutes of limitations" than the enforceable products liability "statutes of repose."

Based on the above, it appears most likely that the Ohio courts would find that the four year statute of repose contained in the Ohio securities statute violates the right-to-remedy clause of the Ohio Constitution.  That provision is, therefore, unenforceable.  Ohio law would further dictate that this provision may be severed from the remaining provisions in O.R.C.

strongly criticized their reasoning and limited the effect of their holdings that this Court would not rely on them as being indicative of how the Ohio Supreme Court would address this area of law in future cases.

§1707.43(B)(2002), which are constitutional and capable of independent application.

> If any provisions of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable.

Ohio Revised Code §1.50.  "Indeed it is our obligation to preserve as much of the General Assembly's handiwork as is constitutionally permissible."  *State, ex rel. Doersam v. Industrial Commission of Ohio*, 45 Ohio St. 3d 115, 121, 543 N.E.2d 1169, 1175 (1989).

This would leave in effect the two year statute of limitations contained in O.R.C. §1707.43(B)(2002). which does not begin to run until "after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful."  *Id.* The question of when the plaintiffs knew or had reason to know that the defendants had engaged in the alleged wrongful acts is a question of fact which cannot be determined at this stage of the proceedings.  Therefore, the Defendants' motion to dismiss all of the Plaintiffs' state claims on the basis of the statute of limitations/statute of repose is hereby denied.

The Court does agree with the Defendants' position, however, that the two year statute of limitations contained in  O.R.C. §1707.43(B) applies to most of the state common law claims set forth in the First (and now Second) Amended Complaint(s).  Ohio Revised Code §1.51 states that, except in certain circumstances not applicable here,  where a general provision conflicts with a special or local provision, the special or local provision prevails as an exception to the general provision.  Therefore, although there are general statutes of limitation for claims of breach of fiduciary duty, fraud, negligent hiring, retention and supervision, negligent misrepresentation, promissory estoppel, and breach of contract/bailment, O.R.C. §1707.43(B) has created a specific

-24-

statute of limitation to be applied when the claims arise out of a sale or contract for sale made in violation of the Ohio securities laws. [12]

Although the Plaintiffs make a reasonable argument as to why certain of their claims should not be considered as "arising from the sale or contract for sale" of securities, the Defendants position ultimately finds more support under the Ohio case law.  The facts underlying the above listed state law claims are inextricably intertwined with the facts underlying the claims for the violations of the state and federal securities laws.  The state common law claims are centered on allegedly illegal activity that took place in the establishment and management of their securities accounts.  The injuries alleged are all directly connected to the value of the securities accounts held by the Plaintiffs, and even where the alleged illegal activity may extend beyond a fraudulent sale, it is all centered on the management of these accounts, either furthering or hiding the illegal acts that were clearly connected to the establishment of the securities accounts and violations of the contracts that governed them. Ohio law weighs heavily toward a finding that common law claims which are predicated on or inextricably interwoven with the sale of securities or the contracts related to securities sales are governed by the statute of limitations in O.R.C. §1707.43(B).  *See, e.g., Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 243-44 (Columbiana Cty. 2000); *Ware v. Kowars*, 2001 Ohio App. LEXIS 199, *11-14 (Franklin Cty. Jan. 25, 2001); *Kondrat v. Morris*, 118 Ohio App.3d 198, 205 (Cuyahoga Cty.1997); *Hater v. Gradison Div. Of McDonald and Co. Securities*, 101 Ohio App. 3d 99, 113 (Hamilton Cty. 1995); *see also Wuliger*

---

[12]

The claims for violations of Ohio's Pattern of Corrupt Activities laws, O.R.C. §2923.32 (brought pursuant to O.R.C. §2923.34(B)), are subject to a five year statute of limitations which begins to run after the unlawful activity terminates, or the cause of action accrues or within any longer statutory period of limitation that may apply.

-25-

*v. Anstaett*, 363 F.Supp. 2d 917, 934 (N.D. Ohio 2005).

Thus, although none of the Plaintiffs' claims can be dismissed at this stage in the proceedings based on the expiration of the applicable statute of limitations, the Court will apply the two year statute of limitations found in O.R.C. §1707.43(B) to Counts One, Two, Five, Nine, Ten, Eleven, and Twelve of the First Amended Complaint, and to Counts One, Two, Five, Six, Seven, Eight, and Nine of the Second Amended Complaint. This limitations period began to run when the Plaintiffs knew, or had reason to know, of the "facts by reason of which the actions of the Defendants were unlawful." Ohio Rev. Code §1707.43(B)(2002)

### D. Promissory Estoppel

In the First Amended Complaint, the Plaintiffs seek damages under a theory of promissory estoppel. Melissa Lopardo abandoned this claim in the Second Amended Complaint and instead added a claim for Equitable Estoppel. The Defendants claim that both should be dismissed for failure to state a claim upon which relief can be granted.[13]

Promissory estoppel is an equitable claim which, as its name implies, requires that there has a been a promise of some future act or omission. To establish a claim for promissory estoppel, a plaintiff must show: (1) a promise, clear and unambiguous in its terms; (2) reasonable and foreseeable reliance; and (3) injury resulting from the reliance. *See, e.g., Andersons, Inc. v. Consol, Inc.*, 185 F.Supp. 2d 833, 840 (N.D. Ohio 2001). "A promise, for promissory estoppel

---

[13] Although there has been no specific briefing of a Motion to Dismiss the Second Amended Complaint, the briefs in opposition to allowing the filing of that Complaint address this issue in detail. The Court will treat those arguments as a request for dismissal by the Defendants, and will apply Melissa Lopardo's arguments in favor of granting the filing as her arguments opposing dismissal.

purposes, must involve commitment, or manifestation of an intention to act or refrain from acting in a specified way." *Id.* (internal citation omitted).

As argued by the Defendants, the First Amended Complaint fails to allege any actual promises made by Frank Gruttadauria or the other Defendants to the Plaintiffs, that were reasonably relied on and which resulted in injury to the Plaintiffs.  The First Amended Complaint alleges misrepresentations about the past or current "status" of accounts, but does not allege any clear and unambiguous promise of future behavior.  Such allegations cannot support a claim of promissory estoppel.  *See Telxon Corp. V. Smart Media of Del., Inc*., 2005 WL 2292800, at * 13 (Ohio Ct. App. 2005)(distinguishing promissory estoppel from negligent and intentional misrepresentation); *Hortman v. City of Miamisburg*, 110 Ohio St. 3d 194, 199, N.E.2d 716, 720 (2006)(promissory estoppel cannot be based on a mere misstatement of fact)*; In re Smarttalk Teleservices, Inc. Sec. Litig*., 124 F.Supp.2d 487, 499 (S.D. Ohio 2000).

The equitable estoppel claim set forth by Melissa Lopardo in the Second Amended Complaint also fails to state a claim upon which relief can be granted.  Although there are a few courts that have treated this claim as a recognizable cause of action, the great majority of Ohio courts, including the Ohio Supreme Court, have recognized that equitable estoppel is a defense and not an independent cause of action. *See, e.g.,  Does v. Archdiocese of Cincinnati*, 109 Ohio St. 491, 502, 849 N.E.2d 268, 278 (2006)("equitable estoppel is a defense");  *Holt Co. of Ohio v. Ohio Machinery Co.*, 2007 Ohio 5557 ¶28, 2007 WL 3027084, *6 (Ohio Ct. App. 2007); *Cleveland v. Vill of Marblehead*, 2001 WL 279763, *2 (Ohio Ct. App. Mar. 23, 2001); *see also J.D. Partnership v. Berlin Township Bd. of Tr.*, 412 F. Supp.2d 772, 786 (S.D. Ohio 2005); 42 Ohio Jur. 3d Estoppel and Waiver §30.  "[E]stoppel is, according to the usual statement, a shield,

not a sword.  It does not furnish a basis for damages claims, but a defense against the claim of the stopped party."  *First Fed. Sav. & Loan Ass'n of Toledo v. Perry's Landing, Inc*., 11 Ohio App.3d 135, 145 (1983).

Based on the above-cited authority, Richard and Catherine Lopardo's claims for Promissory Estoppel against Hambrecht & Quist, J.P. Morgan, and Frank Gruttadauria; Charles Lopardo's claims for Promissory Estoppel against Cowen & Company, S.G. Cowen, and Frank Gruttadauria; and Melissa Lopardo's claims for Equitable Estoppel against Cowen & Company, S.G. Cowen and Frank Gruttadauria are all dismissed.  Based on the factual allegations set forth in the First and Second Amended Complaints it appears that any further amendments to these claims would be futile under the circumstances.  Therefore, the Plaintiffs' claims are hereby dismissed with prejudice.

E.  Pattern of Corrupt Activity Claims

Counts Six, Seven and Eight of the First Amended Complaint allege three separate claims for violations of Ohio's Pattern of Corrupt Activity Statute, O.R.C. § 2923.32 against Frank Gruttadauria.[14]  Count Six alleges he was part of an enterprise with Hambrecht & Quist from 1987 until May of 1989 (the years he allegedly worked for them).  Count Seven alleges he was part of an enterprise with Cowen & Company and SG Cowen Securities from May 1989 through October 2000 (the period of time he worked for these companies).  Count Eight alleges he was part of an enterprise with DeGrandis & DeGrandis, an accounting firm he did business with from 1991 until

---

[14]

  O.R.C. § 2923.34(B) provides individuals with a civil cause of action for violations of §2923.32, which is otherwise a criminal statute.

January 2002.  There is no allegation that Mr. Gruttadauria was ever an employee of DeGrandis & DeGrandis.

The elements of a claim for violations of the Pattern of Corrupt Activity Statute ("PCA") are: "(1) conduct of the defendant which involves the commission of two or more specifically prohibited state or federal criminal offenses; (2) the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity; and (3) the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise."  *Universal Coach, Inc. v. New York City Transit Auth.*, 90 Ohio App. 3d 284, 291, 629 N.E.2d 28, 32 (Ohio Ct. App. 1993)(citing *Sedima S.P.R.I. v. Imrex Co*., 473 U.S. 479 (1985)).  Only "persons" committing the illegal acts can be liable under the PCA, the enterprise itself is not liable.  *U.S. Demolition & Contracting, Inc., v. O'Rourke Constr. Co.*, 94 Ohio App.3d 75, 84, 640 N.E.2d 235, 241 (Ohio Ct. App. 1994); *Fleishhauer v. Feltner*, 879 F.2d 1290, 1296-97 (6th Cir. 1989).[15]

The First Amended Complaint clearly alleges conduct involving the commission of two or more specifically prohibited state or federal criminal offenses.  Further, the First Amended Complaint directs the PCA counts only at Frank Gruttadauria and not at the companies which are listed as the "enterprises."  Because employees are considered distinct from their employers for purposes of establishing a "person" who is separate from the alleged enterprise, the second element is satisfied at this early pleading stage.[16]  Finally, because Frank Gruttadauria is alleged to

---

[15]

The PCA is patterned on the federal Racketeering Influenced and Corrupt Organizations Act ("RICO").  Therefore, Ohio courts look to federal law applying RICO when they apply PCA.  *U.S. Demolition & Contracting, Inc., v. O'Rourke Constr. Co.*, 94 Ohio App.3d 75, 84, 640 N.E.2d 235, 241 (Ohio Ct. App. 1994)(citations omitted).

[16]

The First Amended Complaint does not allege PCA claims against the brokerage defendants.  Further, as pled, the allegations would not support such claims because the

have been an employee of S.G. Cowen and Cowen & Company, and is alleged to have worked with and through DeGrandis & DeGrandis, the third element is also satisfied.  Therefore, Counts Six, Seven and Eight of the First Amended Complaint remain as against Frank Gruttadauria.

The Second Amended Complaint, containing the claims and allegations of Melissa Lopardo, brings PCA claims against S.G. Cowen (Count Four) and Cowen & Company (Count Three).  An enterprise, for purposes of RICO/PCA, is any individual, partnership, corporation, association, or other legal entity, or any union or group of individuals associated in fact although not a legal entity.  *United States v. Turkette*, 452 U.S. 576, 579 (1981). The requirements of an enterprise, no matter how constructed include: (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) members who function as a continuing unit with established duties.  *See United States v. Chance*, 306 F.3d 356, 372 (6th Cir. 2002).  The Second Amended Complaint alleges an enterprise that is an association-in-fact between Frank Gruttadauria, DeGrandis & DeGrandis ("D&D"), JYM Trading Trust ("JYM"), and DH Strategic Partners, Inc. ("DHSP").  When the enterprise is an association-in-fact, the "complaint must contain facts suggesting that the behavior of the listed entities is coordinated in such a way that they function as a continuing unit" (internal citations omitted).  *Begala v. PNC Bank*, 214 F.3d 776, 782 (6th Cir. 2000); *see also VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699-700 (6th Cir. 2000).

The parties disagree as to whether the Second Amended Complaint sets forth sufficient facts to suggest that the alleged enterprise functioned as a continuing unit with an established

---

enterprise and the defendant must be distinct entities.  *U.S. Demolition & Contracting, Inc., v. O'Rourke Constr. Co.*, 94 Ohio App.3d 75, 84, 640 N.E.2d 235, 241 (Ohio Ct. App. 1994).

-30-

framework or umbrella structure for making and carrying out decisions.  The segment of the Second Amended Complaint that sets forth the specific claims for PCA violations does not allege facts that would support an inference that the listed entities were coordinated as a unit, that they had an overarching structure or that there was any organization of duties, or decision making among the entities.  However, in the body of the Second Amended Complaint, Melissa Lopardo alleges that Frank Gruttadauria created JYM as a shell corporation for the purpose of advancing his illegal activities.  She also alleges that DHSP was established by Gruttadauria and D&D, that they had a common purpose in hiding Gruttadauria's illegal acts and in laundering money that he was allegedly misappropriating from his clients' accounts.  Further, the nature of the allegations and the extended duration of the alleged malfeasance creates a reasonable inference that the entities participating in the corrupt activity were organized and had specific assigned roles within the alleged enterprise. Taking all of the facts set forth in the body of the Second Amended Complaint, construing those facts in the light most favorable to the plaintiff, accepting them as true, and drawing reasonable inferences in favor of the plaintiff, the allegations are sufficient to plead the existence of an "enterprise"for purposes of the PCA.[17]

---

[17]

  The Court notes, however, that the First and Second Amended Complaints may not adequately state a claim against the brokerages for both this PCA claim and the intentional fraud claims under a theory of vicarious liability.   Under Ohio law an employer cannot be liable for the tortious acts of its employee unless the employee is acting within the scope of employment when the act is committed.  *See, Groob v. Keybank*, 108 Ohio St.3d 348, at syllabus ¶ 2, 843 N.E.2d 1170 (2006).  Further, when the employees acts are intentional, "the behavior [at issue] must be 'calculated to facilitate or promote the business for which the servant was employed.'" *Id.* at 356 *(citing Byrd v. Faber*, 57 Ohio St.3d 56, 58, 565 N.E.2d 584 (1991).  The Ohio Supreme Court has repeatedly emphasized that "an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Id.*
        The complaints do make a broad allegation that Frank Gruttadauria's actions were undertaken within the scope of his employment, however, they clearly allege that

## **CONCLUSION**

For all of the reasons set forth above, the Court grants Melissa Lopardo's Motion for Leave to file a Second Amended Complaint (ECF # 273) and, as the other remaining plaintiffs have not joined in this motion, the Court hereby incorporates by reference the changes in the claims Melissa Lopardo is asserting against the Defendants into the First Amended Complaint. The Court further finds that Defendants' Motions to Dismiss are granted in part and denied in part. (ECF # 219, granted in part and denied in part; ECF #221, denied;  ECF # 222, granted in part and denied in part; ECF # 232, granted in part and denied in part).

The following claims are hereby dismissed.

- All of Richard and Catherine Lopardo's claims against Cowen & Company and S.G. Cowen are dismissed with prejudice.

- Counts Three and Four (Federal Securities Claims) of the First Amended Complaint are dismissed with prejudice as against Defendants Hambrecht & Quist, J.P. Morgan, and Cowen and Company.  As against Frank Gruttadauria and S.G. Cowen, these counts are temporally limited to claims arising after April 22, 1999.

- Count Eleven (Promissory Estoppel) of the First Amended Complaint is dismissed with prejudice.

- Count Seven (Equitable Estoppel) of the Second Amended Complaint is dismissed with prejudice.

---

Gruttaduaria was out for his own personal gain and they makes absolutely no allegation that his crimes and other acts in any way promoted or facilitated the business of the brokerages he worked for.  Because none of the Defendants have raised this as an issue, the Court will not dismiss the claims at this time, however, they will be closely scrutinized at later stages of the litigation to ensure that the requirements for vicarious liability under these circumstances have been satisfied.

The following claims are still pending:

- Richard and Catherine Lopardo's claims against Frank Gruttadauria, Hambrecht & Quist and J.P. Morgan for breach of fiduciary duty, fraud, negligent misrepresentation, violations of O.R.C.§ 1707.44, breach of implied contract/bailment (First Amended Complaint, Counts One, Two, Five, Ten, and Twelve);

- Richard and Catherine Lopardo's claims against Hambrecht & Quist and J.P. Morgan for negligent hiring, retention and supervision (First Amended Complaint, Count Nine);

- Richard and Catherine Lopardo's claims against Frank Gruttadauria for violations of O.R.C. §1707.44, and O.R.C. § 2923.32 (First Amended Complaint, Counts Five, Six, Seven, and Eight);

- Richard and Catherine Lopardo's claims against Frank Gruttadauria for federal securities violations occurring after April 22, 1999 (First Amended Complaint, Counts Three and Four);

- Charles and Melissa Lopardo's claims against Frank Gruttadauria , Cowen & Company, and S.G. Cowen for breach of fiduciary duty, fraud, negligent misrepresentation, and breach of implied contract (First Amended Complaint One, Two, Ten, and Twelve; Second Amended Complaint, Counts One, Two, Six, and Eight);

- Charles and Melissa Lopardo's claims against Cowen & Company and S.G. Cowen for negligent hiring, retention and supervision (First Amended Complaint Count Nine; Second Amended Complaint, Count Five);

- Charles Lopardo's claims against Frank Gruttadauria and S.G. Cowen for federal securities violations occurring after April 22, 1999 (First Amended Complaint, Counts Three and Four);

- Charles Lopardo's claims against Frank Gruttadauria for violations of O.R.C. § 2923.32 (First Amended Complaint, Counts Six, Seven, and Eight);

- Charles Lopardo's claims against Frank Gruttadauria, S.G. Cowen, and Cowen & Company for violations of O.R.C. §1707.44, and breach of bailment (First Amended Complaint Counts Five and Twelve);

- Melissa Lopardo's claims against S.G. Cowen and Cowen & Company for violations of O.R.C. § 2923.32 (Second Amended Complaint, Counts Three and Four);

-33-

- and Melissa Lopardo's claims against Frank Gruttadauria, Cowen & Company and S.G. Cowen for punitive damages (Second Amended Complaint, Count Nine).

The remaining fact discovery is to be completed by May 10, 2008.  Plaintiffs' expert disclosures and reports are due on or before June 1, 2008.  The Defendants' expert disclosures and reports are due July 1, 2008.  Any summary judgment motions shall be filed by June 13, 2008, with responses due on July 14, 2008.[18]  Replies, if warranted may be filed on or before July 21, 2008.  No sur-replies are allowed without prior permission from the Court.  The trial of this case shall take place on September 3, 2008.  A separate trial order will follow this opinion.  No status conference is currently scheduled, however, one the Court will be promptly set a conference upon the timely request of any party.

 IT IS SO ORDERED.


                                                                  S/Donald C.Nugent
                                                                 DONALD C. NUGENT
                                                                 United States District Judge


DATED:   March 6, 2008

---

[18]

The Court is aware that Defendants Hambrect & Quist and J.P. Morgan have already filed a Motion for Summary Judgment against Plaintiffs' Richard and Catherine Lopardo.  The Lopardos timely filed their Response to this Motion on Monday, February11th, 2008.  The Court will rule on this Motion without delay.